**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lucinda SANDERS, Defendant-Appellant.**

No. 81–5844.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1982.

Decided Oct. 26, 1983.

Stephen B. Shankman, Memphis, Tenn., for defendant-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty. (argued), Memphis, Tenn., for plaintiff-appellee.

Before LIVELY, Chief Circuit Judge, KENNEDY, Circuit Judge, and SPIEGEL, District Judge.*

SPIEGEL, District Judge.

In this criminal case, defendant Lucinda Sanders appeals her conviction pursuant to 21 U.S.C. § 841(a)(1) for possession of marijuana and cocaine with intent to distribute. She maintains that her conviction rests on evidence obtained through an illegal search of her suitcase by DEA agents. We agree, and therefore reverse the conviction.

The issue is whether the detention of a suspect's luggage for over three hours where the detaining officers have a reasonable and articulable suspicion that the suspect is engaged in drug trafficking is a violation of the Fourth Amendment's prohibition against unreasonable seizures of property. We emphasize that the critical issue is the detention of the luggage, not the detention and arrest of the suspect herself, as her conviction is based upon evidence uncovered during the search of the suitcase, not evidence discovered as a result of the detention of Sanders herself.

Our analysis of the evidence results in the following conclusions. Sanders did not abandon her suitcase so as to render lawful the seizure of her luggage. Second, the detention of the luggage went beyond the bounds of an investigative stop as those bounds were established by the Supreme Court in *United States v. Place*, —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Assuming reasonable suspicion to detain the

suitcase, we nevertheless conclude that detaining the suitcase and the suspect for over three hours was excessive in duration and not the least intrusive means for accomplishing the investigation.

I.

This is yet another of the multitude of cases arising out of the Drug Enforcement Agency's reliance on the drug courier profile in detecting and apprehending persons involved in drug trafficking. These cases abundantly illustrate the well-established principle that each case raising a Fourth Amendment question must be evaluated on its own facts. *United States v. Tolbert*, 692 F.2d 1041, 1043 (6th Cir.1982). The facts are largely undisputed. The following account is based upon the testimony of Sanders and DEA agent Griggs at the suppression hearing July 23, 1981.

On March 31, 1981, DEA agent Gerald Chapman observed Lucinda Sanders in the Atlanta airport as she got off a Delta flight from Miami. Sanders, whom the agent knew as Patricia Clark, asked the ticket agent about a connecting flight to Memphis. Chapman went to the appropriate departure gate and was able to see the ticket Sanders handed to the gate agent. He noted that she held a one-way ticket to Memphis in the name of Patricia Clark as well as the claim number on the baggage check attached to the ticket.

Chapman's subsequent investigation revealed two reservations for flights to Memphis in the name of Patricia Clark. One of the reservations was made at 8:15 a.m. for an 8:50 a.m. flight; the second was made at 8:30 a.m. The ticket had been paid for in cash. Sanders had given the airline two call-back numbers. The person at the first number had never heard of a Patricia Clark. The second call-back number was to a room at the Miami Holiday Inn registered to Cynthia Jackson of 2239 Shannon in Memphis. Chapman identified a suitcase in the Delta baggage room with a claim num-

* The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, Western Division, sitting by designation.

ber matching the one on the claim ticket attached to Sanders airline ticket. The tag on the suitcase had the name Patricia Clark and a second Memphis address. The suitcase smelled heavily of perfume, commonly used by drug couriers to mask the odor of drugs. Chapman also ascertained that the addresses used by Sanders on her luggage tag and at the Miami Holiday Inn were fictitious.

Chapman communicated all of this information to DEA agent Markonni and together they approached Sanders in the Atlanta airport shortly before her flight was to leave. The agents identified themselves and asked Sanders for identification which she refused to produce. Sanders then boarded the plane for Memphis.

Markonni called the Memphis DEA office and related the results of the investigation to DEA agent Buster B. Griggs, Jr. Griggs, DEA agent Lawrence, and Sergeant Gayle Hewlett of the Memphis Narcotics Unit went to the Memphis airport where they identified Sanders on the basis of Markonni's description. They watched her walk through the airport and out the front door and then return inside where she spoke briefly with a skycap. Sanders then went downstairs, walked past the baggage claim area without claiming her suitcase and proceeded outside where she got into a cab.

The agents approached Sanders and asked her to get out of the cab, which she did. The agents identified themselves. Sanders told them her name was Patricia Clark. She gave them her ticket for the flight to Memphis, but said she had no other identification.

The agents told Sanders they were narcotics agents investigating drug trafficking. Griggs testified that when they asked if she was carrying any illegal drugs, Sanders offered to let them search her purse. Sanders testified that she gave them her purse only after they requested her to do so. She also testified she was told she was under arrest when she got out of the cab, and that she was handcuffed after turning over her purse.

Griggs testified that after Sanders gave them her purse, Lawrence suggested that instead of searching the purse on the sidewalk, they retrieve Sanders' suitcase and go into the airport. According to Griggs, Sanders became very nervous at mention of the suitcase. He also testified that she jerked back her purse, stating that they could not search anything without a warrant.

Griggs testified he told Sanders he would have to see some identification. When she refused to produce it, he told her she was under arrest and read her rights to her. He did not recall whether she was handcuffed then or after they removed her to the airport security room. Regardless of whether the arrest occurred when Sanders was told to get out of the cab or later when she was taken to the airport security office, it was clearly before her suitcase was retrieved.

Griggs and Hewlett accompanied Sanders to the security room while Lawrence retrieved the suitcase. When Lawrence returned with the suitcase, Sanders refused to consent to a search. The agents took Sanders and the suitcase to the Federal Building in downtown Memphis.

Sanders testified without contradiction that she was detained in the DEA offices for three to four hours while the agents obtained a dog sniff and search warrant. After a trained narcotics detection dog alerted on the bag, the agents obtained a search warrant. A search of the suitcase revealed approximately two pounds of marijuana and approximately two ounces of cocaine.

Although the United States argued the issues of standing and abandonment at the suppression hearing, the trial court assumed that Sanders had standing to raise a Fourth Amendment claim.[1] It did not consider the abandonment question, relying instead on the legality of the stop at the Memphis airport as grounds for denying the motion to suppress.

1. The issue of standing has not been raised on appeal and thus we do not consider it.

The trial court expressly found that Sanders was under arrest when the agents asked her to get out of the cab, but reasoned that the agents had reasonable and articulable suspicions which justified detaining her. Apparently concluding that if the detention of Sanders was lawful, seizure of her suitcase was also lawful, the Court denied the motion to suppress.

The case was tried to the Court. The marijuana and cocaine seized during the search were introduced at trial. Sanders was convicted for possession of cocaine and marijuana with intent to distribute and sentenced on November 20, 1981 to 18 months confinement followed by three years probation.

On appeal, Sanders contends that the stop at the Memphis airport was unlawful because the agents lacked either probable cause or reasonable suspicion for that stop. Contending that the search of her suitcase was pursuant to an unlawful stop, she concludes that the evidence seized during that search should have been suppressed.

The United States makes three arguments on appeal. First, it maintains that the propriety of the stop is not at issue as Sanders abandoned the suitcase when she failed to claim it at the Memphis airport. However, because Sanders relies on the allegedly illegal stop, the United States argues that the agents had reasonable suspicion sufficient to support a stop. Finally, the United States maintains that even if Sanders did not abandon the suitcase, the agents acted lawfully in detaining the luggage for the purpose of obtaining a dog sniff. This third argument involves the detention of the suitcase only, not that of Sanders herself.

This panel reserved ruling pending the Supreme Court's decision in *United States v. Place.* Following the Court's decision, —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), we requested supplemental briefs on *Place's* applicability to the case at bar. We need not consider the legality of the detention of Sanders herself as the agents' treatment of her luggage is dispositive.

## II.

The threshold issue is that of abandonment. If Sanders abandoned her luggage, the seizure and subsequent search of the suitcase were lawful. Although the trial court did not discuss abandonment, we can infer that the Court found Sanders had not abandoned her suitcase, as the denial of the motion was based solely on the Court's determination that the arrest of Sanders was lawful.

The testimony pertinent to abandonment is straightforward. Sanders testified she told the agents in Memphis she had not claimed her suitcase because she was not going home immediately. On cross-examination, she stated she "never denied" the bag was hers. Griggs testified that when asked whether it was her suitcase, Sanders responded that "It might be, and it might not." He further testified that she refused to consent to a search of the suitcase both at the airport and again at the DEA offices in Memphis. On cross-examination, he repeated this testimony.

Two things are clear. Sanders did not expressly identify the suitcase as hers. Neither did she expressly disclaim it.

A panel of this court has considered the nature of abandonment in a case with facts remarkably similar to those presented here—with one significant difference. *United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982). Tolbert, who matched characteristics of the drug courier profile, was questioned in Atlanta during a trip from Miami to Detroit. When she arrived in Detroit, she left the airport and hailed a taxi without claiming her luggage. DEA agents intercepted her and asked her to return to the terminal for questioning. They also picked up a suitcase they believed to be hers. Tolbert consistently denied ownership of the suitcase, both during questioning at the airport and later at DEA offices in Detroit.

The Court stated that the act of leaving the airport without claiming one's luggage, without more, does not constitute abandonment. The Court nonetheless concluded on

the basis of her actions and vigorous disclaimers that Tolbert had no reasonable expectation of privacy in her luggage at the time it was searched. *Id.* at 1044.

Sanders, unlike Tolbert, never affirmatively disclaimed the suitcase. More important, she consistently refused to consent to a search of the suitcase. In addition, she testified without contradiction that she explained to the agents she had not claimed the suitcase at the Memphis airport because she was not going straight home. One can properly infer from her words and actions that Sanders continued to indicate she had an interest in keeping the contents private. In other words, she continued to have a legitimate expectation of privacy in the suitcase. Accordingly, we conclude that Sanders at no time abandoned her luggage.

### III.

The trial court appears to have reasoned that if the arrest were lawful, the subsequent seizure of the suitcase was legal. We disagree. We emphasize that even if the agents had not arrested Sanders, the detention of her suitcase for over three hours in the absence of probable cause is violative of the Fourth Amendment under principles enunciated by the Supreme Court in *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

The Fourth Amendment protects two different interests—the interest in retaining possession of property and the interest in maintaining personal privacy. *United States v. Place,* —— U.S. at ——, 103 S.Ct. at 2648–49 (Brennan, J., concurring). The former interest is implicated by the agents' seizure of the suitcase.

A fundamental principle of Fourth Amendment law is that authorities may not seize property without first obtaining a warrant based upon probable cause and particularly describing the items to be seized. However, certain limited exceptions to the warrant requirement have been carved out. *See, e.g., Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980) (objects such as weapons or contraband found in a public place); *Arkansas v. Sanders,* 442 U.S. 753, 761, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979) (danger that object to be seized would disappear or be destroyed); *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) (plain view doctrine). Until this year, however, probable cause was a constitutional prerequisite to the lawful seizure of property, with or without a warrant.

The Supreme Court recently applied *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the first time to personal property and held that police may lawfully detain property on less than probable cause for a brief investigation to confirm their suspicions. *United States v. Place,* —— U.S. ——, ——, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983). The issue in our case thus is whether the detention of Sanders' suitcase for between three to four hours is valid under *Place.*

In that case, DEA agents at LaGuardia airport in New York questioned Place after receiving information from Miami agents that he might be a drug courier. The New York agents told Place they believed he was transporting narcotics and would like to search his two suitcases. When he refused to consent, the agents stated that they were going to take his bags to a federal judge to obtain a search warrant and that he could accompany them if he wished. Place declined to do so. The agents took the bags to Kennedy Airport where they were subjected to a dog sniff approximately 90 minutes after the initial seizure of the luggage. *Id.* at ——, 103 S.Ct. at 2641.

The Supreme Court stated that detentions of personal property may vary in the degree to which they intrude upon the individual's interest in retaining possession of property, an interest protected by the Fourth Amendment. The Court reasoned, therefore, that:

> [S]ome brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime. *Id.* at ——, 103 S.Ct. at 2644. The detention is for the purpose of allowing the de-

taining officer to verify or dispel his suspicions.

The Court stated that the reasonableness requirement of the Fourth Amendment requires that such investigatory detentions be temporary "and last no longer than is necessary to effectuate the purpose of the stop." Second, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* at ——, 103 S.Ct. at 2644.

Holding that a dog sniff is not a search within the meaning of the Fourth Amendment, the Court stated that an investigatory detention for the purpose of obtaining a dog sniff is permissible. However, detaining Place's luggage for ninety minutes "alone precludes the conclusion that the seizure was reasonable in the absence of probable cause." *Id.* at ——, 103 S.Ct. at 2645. In determining whether the procedure was so minimally intrusive as to be permissible, the Court considered the diligence of the police investigation. Noting that the La-Guardia agents knew Place's time of arrival, the Court concluded that they could have arranged for the investigation at LaGuardia, thereby minimizing the intrusion on the Fourth Amendment interests. *Id.* at ——, 103 S.Ct. at 2647.

The test developed by Place is twofold. First, the Court must determine whether the detaining officer has a reasonable and articulable suspicion that the property he wishes to seize is connected with criminal activity. If there is reasonable suspicion, the Court must then ascertain whether the detention is reasonable, that is, (1) was it sufficiently limited in time, and (2) were the investigative means used "the least intrusive means reasonably available."

In the case at bar, we assume without deciding that the agents had reasonable suspicion. The detention, however, is clearly unreasonable both as to duration and as to the investigative means.

Sanders testified without contradiction that she was detained by the agents for three to four hours. Although the Supreme Court expressly declined to adopt a permissible outside limit on the duration of investigatory detentions of personal property, it found on the facts of *Place* that ninety minutes exceeded permissible bounds. Similarly, we conclude that three or four hours is excessive. As the agents apparently had time to get from their office to the Memphis Airport after receiving the call from the Miami agents, we question why they could not have arranged to do the investigation at the airport.

Moreover, the Supreme Court established that holding Place's luggage for ninety minutes impermissibly intruded on his Fourth Amendment interests. In our case, the agents held the luggage *and* the suspect for at least three hours.

In conclusion, the investigative detention of Sanders' suitcase was unlawful in that it was longer than was reasonably necessary to effect an investigation and the investigative means, taking Sanders and her luggage from the airport to DEA offices in Memphis to obtain a drug sniff, was not the least intrusive means reasonably available. Accordingly, the evidence obtained from the subsequent search of the suitcase was inadmissible. As Sanders' conviction rests on evidence obtained through an illegal seizure, her conviction must be reversed.