956 F.2d 270
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kalu U. KALU, Defendant-Appellant.
 No. 91-3642.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-appellant Kalu U. Kalu appeals the judgment of conviction and sentence entered on his conditional plea of guilty to possession with intent to distribute heroin, alleging error in the denial of his motion to suppress. For the following reasons, we AFFIRM the decision and judgment of the District Court.
 
 I.
 
 2
 On August 22, 1990, Ohio State Highway Patrol Trooper Timothy Stockman stopped a car traveling north on I-75 after observing it weaving back and forth in its lane. The stop occurred at 2:51 P.M. The vehicle was a rental car with an out-of-state license plate. Defendant was a passenger in the car. Both the driver and defendant produced valid out-of-state driver's licenses. However, neither occupant was listed as an authorized driver of the vehicle on the rental agreement. Defendant explained that the car had been rented by his brother, because of the requirement of a major credit card.
 
 
 3
 After further questioning, Stockman determined that the pair were driving straight through from Kansas to Detroit, which explained the driver fatigue and weaving within the lane. Questioned separately, the two gave slightly disharmonious accounts of the purpose of their trip. The driver appeared to Stockman to be "fidgety and nervous." In light of the lack of authorization to possess the vehicle, Stockman determined to pursue the matter with the rental car company, and directed the pair to follow him to the patrol post a few miles up the highway.
 
 
 4
 At the patrol post, defendant and his companion waited in the lobby while Stockman attempted to reach by telephone the proper authorities with the rental car company to determine whether they wished to expand the authorization to allow him to release the vehicle to defendant. Stockman was not able to reach the proper person until 3:20 P.M., at which time he was informed that the vehicle was due back in Oklahoma City in four and a half hours, that neither individual was authorized to drive the car, and that Hertz would likely request Stockman to retain the vehicle for Hertz to pick up. The Hertz agent hesitated when informed that Hertz would have to file police reports to retake possession of the vehicle, and told Stockman he would get back to him.
 
 
 5
 During this time, defendant and his companion were becoming extremely nervous and agitated. Defendant's companion in particular displayed levels of nervousness and anxiety that Stockman considered highly unusual. In light of the absence of any outstanding warrants or known criminal history for either of the two individuals, Stockman considered their escalating anxiety to be quite suspicious. Taken in conjunction with the circumstances of a rental car being used in the absence of the authorized renter, travelling straight through to a known "source city," the nervousness and slightly conflicting stories given by the individuals indicated to Stockman a possibility that drug trafficking might be involved. In consultation with his supervisor, Stockman called for a trained drug dog to check the vehicle.
 
 
 6
 At 3:35 P.M., the Hertz representative called Stockman to inform him that Hertz would not press charges against the individuals, and that the car could be released to them. Stockman estimated that the call took two to three minutes. Stockman then went upstairs to inform his supervisor of this development, and to clear the release of the vehicle. The officers then decided they would wait for the drug dog, but it arrived while the conversation took place, at 3:39 P.M. By 3:40 P.M., the dog had alerted to the trunk of vehicle, which was searched under probable cause, and heroin was found inside.
 
 
 7
 Defendant was charged with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He filed a motion to suppress the evidence of the heroin, but after a hearing the motion was denied. He then entered a conditional plea of guilty, preserving his right to appeal the adverse ruling on the motion to suppress.
 
 II.
 
 8
 Defendant raises essentially two issues on appeal. First, he contends that his removal to the patrol post and detention there constituted an impermissible de facto arrest. Second, he contends that the probable cause of the dog's alert to the presence of the drugs arose out of an illegal detention of him without a sufficient articulable basis, and therefore should be suppressed. We address these issues in turn.
 
 
 9
 The Fourth Amendment protects citizens against searches and seizures by government agents in the absence of proper authorization. Limited exceptions have been found, however, for purposes such as brief investigatory detentions. Terry v. Ohio, 392 U.S. 1 (1968). Such detentions must be based upon reasonable suspicion, and cannot be so intrusive or inconsistent with the conceptual underpinning of the Fourth Amendment as to constitute an "arrest" or "seizure." No bright-line test has been set forth for assessing when that line has been crossed, however. United States v. Sharpe, 470 U.S. 675 (1985).
 
 
 10
 Defendant cannot seriously contend that his detention was not based upon reasonable suspicion. His initial detention was based upon a traffic violation which has not been contested. Upon determining that neither the driver nor the passenger was authorized to operate the vehicle according to the rental agreement, which was the only evidence of their authority to be in possession of the vehicle, it certainly was reasonable to believe that the rental agency would consider the car taken by an unauthorized person. Trooper Stockman was therefore quite proper in taking further steps to determine whether the defendant and his companion were in the very process of committing car theft, or at least unauthorized use of a motor vehicle.
 
 
 11
 The issue then becomes whether transporting defendant to the patrol post and detaining him there crossed the line of reasonable detention and became an arrest.[1] Courts analyzing this type of issue typically look to the diligence of the police in conducting their investigation, United States v. Place, 462 U.S. 696, 710 (1983), the reasonableness of the time involved, United States v. Sanders, 719 F.2d 882, 887 (6th Cir.1983), and the reasonableness of the means used to effectuate the detention and to conduct the investigation. Id. The Supreme Court has stated, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Place, 462 U.S. at 703.
 
 
 12
 The detention at issue here involved no interrogation, and no coercive confinement. Rather, defendant simply sat waiting in a lobby from the time of arrival (some time after the 2:51 P.M. initial stop) until 3:20 P.M., at which time Hertz informed Trooper Stockman that it would likely not release the vehicle to the unauthorized drivers, and might consider pursuing the matter. Moreover, defendant was not removed from somewhere he had a legal right to be, for without the authorization from the rental car company, defendant had no right to possession of the car. The release was not granted by Hertz until 3:35 P.M. Sitting alone in a lobby for half an hour while awaiting the results of some investigatory phone calls, although it is a detention and does constitute an infringement on Fourth Amendment freedoms, does not represent an extreme or outrageous intrusion on defendant's freedom.
 
 
 13
 This is particularly so in light of the countervailing governmental interests. It is certainly reasonable for an officer to investigate car theft while it is occurring. It might well have been negligent of Trooper Stockman to have released the vehicle without obtaining authorization from Hertz.
 
 
 14
 The issue then becomes whether it was reasonable to have defendant accompany him to the patrol post and wait there while Stockman made the calls himself. The alternative, detaining defendant on the highway, may have been less intrusive in terms of the nature of the detention, but likely would have incurred a concomitant increase in the length of detention, for there is no reason to believe that another officer was free to give the investigation immediate attention. It was entirely possible that Hertz would insist on speaking with the occupants of the car personally before releasing the car to them. In light of the continuing safety risks attendant with waiting on the highway, not only to the officer and the detainees but as to passing traffic impeded by "gawkers," we do not think it was unreasonable to have the defendant accompany the officer a few miles up the highway and wait in the lobby while Stockman personally and immediately investigated the matter.
 
 
 15
 Two other factors reinforce our conclusion. First, defendant has made no showing, and none appears on the record, that Stockman was anything but diligent in pursuing the investigation. Had the defendant been detained for several hours while Stockman attended to other matters, this might be a closer case. See, e.g., Place, 462 U.S. at 709 (unreasonable delay for arrival of drug dog despite agents' advance notice of necessity). Here, however, Stockman informed his superiors of the developments, promptly phoned the proper parties, and awaited their response.
 
 
 16
 Second, the interest of the government in preventing an ongoing crime is particularly strong. In light of the inherently transient and mobile nature of car theft, detention of persons quite reasonably suspected of driving a potentially stolen car is crucial to prevention and detection of the crime. The Supreme Court has articulated three important reasons justifying detention of persons while executing a valid search warrant: "preventing flight in the event incriminating evidence is found," "minimizing the risk of harm" both to the officers and the occupants, and "orderly completion of the search." Place, 462 U.S. at 704 (quoting Michigan v. Summers, 452 U.S. 692, 702-03 (1981)). These factors all weigh strongly in favor of the government having the opportunity to detain these individuals in the lobby until the reasonable suspicion is cleared up. Requesting the defendant to accompany the officer up the road to wait in the lobby rather than remaining at the side of the road is not sufficiently more intrusive in terms of quality or degree to alter the balance.
 
 III.
 
 17
 Defendant's second argument relates to the subjection of the car to the drug dog test. Trooper Stockman conceded that he and his supervisor determined that they would detain defendant until they were able to conduct the dog sniffing test on the automobile. We have no objection to conducting such a test on a vehicle properly detained when there exist factors providing a reasonable suspicion of drug trafficking. Here, the combination of the rental car without authorization, the straight-shot trip to a known source city, the conflicting stories and the extreme anxiety of the individuals did provide sufficient basis to conduct a dog sniff test, if the vehicle was properly detained.
 
 
 18
 As defendant vigorously points out, however, the vehicle was detained on the basis of suspected car theft, or at least unauthorized use of a motor vehicle. Once those grounds for the detention evaporated, defendant should have been released. Our focus is therefore whether defendant was impermissibly detained to be subjected to the dog test.
 
 
 19
 The Magistrate Judge and the District Court found as a factual matter that he was not. We see no error in those findings. The phone call authorizing release of the vehicle was received at 3:35 P.M. The call was estimated to have lasted two or three minutes. Stockman then walked upstairs and informed his supervisor of this development. During this conversation, the drug dog arrived, at 3:39 P.M. The dog alerted to the presence of heroin in the vehicle at 3:40 P.M.
 
 
 20
 Stockman conceded that he and his supervisor had determined to detain defendant until the dog arrived. Had they done so, we would face a different issue. On the facts before us, however, their subjective intentions are irrelevant. It was quite reasonable for Stockman to inform his supervisor of the Hertz decision, and to obtain clearance to release the car and the defendant. While he was doing so, the dog arrived and conducted the sniff test. There is no evidence that Stockman delayed or prolonged the detention unnecessarily. That he was willing to do so, absent any showing that he did, is not a cognizable constitutional violation.
 
 IV.
 
 21
 For the foregoing reasons, we AFFIRM the decision and judgment of the District Court.
 
 
 
 [1]
 Defendant addresses his appeal in terms of an arrest of his person, rather than a temporary seizure of the automobile pending determination of its status. We consider them to be equivalent in this circumstance, for the officer involved stated that he did not consider defendant free to leave, and as a practical matter he was not free to leave without the police authorizing his use of the rental car. Our analysis of the intrusion on defendant's freedom to leave is therefore analogous to an analysis of his freedom to maintain property free from searches and seizures. United States v. Place, 462 U.S. 696, 708-09 ("The person whose luggage is detained [may be] technically still free to continue his travels ... [but] such a seizure can effectively restrain the person.... Therefore, when the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause.")