**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 06a0421n.06
Filed: June 22, 2006

**Case No. 04-6329**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL FROM THE UNITED** |
| Plaintiff-Appellant, | ) | **STATES DISTRICT COURT FOR** |
| | ) | **THE MIDDLE DISTRICT OF** |
| v. | ) | **TENNESSEE, NASHVILLE DIVISION** |
| | ) | |
| TERRI LEIGH EDEN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: RYAN and COLE, Circuit Judges; and SARGUS, District Judge.**[*]

**SARGUS, District Judge.** In the early morning hours of June 13, 2004, the police in Mineral County, Montana conducted a routine traffic stop of Defendant-Appellee, Terri Leigh Eden, for a speeding violation. Upon noting Eden's name did not appear on the rental car agreement that she displayed, the police contacted the rental car agency and requested confirmation as to whether Eden was an authorized driver. Thereafter, the police officer issued a traffic citation, and the transaction for which Eden was pulled over was completed. The police then further detained Eden until more information could be obtained regarding whether she was an authorized driver of the rental vehicle. Learning that she was not, and receiving further instructions from the rental car company that it wanted the car towed, the police told Eden to remove all of her belongings from the rental vehicle and offered to transport her the next town, with the understanding that all items she

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

intended to bring into the police car would be searched. The officer twice told Eden that she was free to leave and twice told her to gather her belongings from the vehicle. Eden refused to consent to a full search of the car. Ultimately, Eden collected a purse, mobile phone and rolling suitcase from the passenger portion of the vehicle, declined to have the police transport her and began walking down the highway. The police thereafter received consent from the rental car company to conduct a search, opened the trunk and discovered a suitcase full of cocaine.

Eden filed a motion to suppress, arguing that the search was illegal. The government countered that Eden had abandoned the suitcase and thus, the search was not subject to Fourth Amendment scrutiny. The district court determined that Eden had not abandoned the suitcase and therefore granted the motion to suppress. This appeal by the government followed.

For the reasons that follow, we conclude that Eden neither voluntarily abandoned nor affirmatively disclaimed her legitimate privacy interest in the suitcase. Accordingly, the decision of the district court is **AFFIRMED**.

**I.**

On June 13, 2004, at approximately 1:50 A.M., Officer John Polich with the Mineral County, Montana Sheriff's Department, stopped Defendant-Appellee, Terri Leigh Eden, after measuring the speed of her car with radar at eighty-nine miles per hour in a seventy-five mile per hour zone. At the request of Officer Polich, Eden produced her driver's licence and a rental car agreement executed between National Car Rental and Darrel Eden of Kirkland, Washington. Officer Polich asked Eden for the identity of the male on the rental agreement, to which she responded that he was

her husband.[1] Upon further questioning by Officer Polich, Eden indicated that her husband had rented the vehicle and that he was in Missoula, Montana visiting a relative. Eden said that she had left Kirkland, Washington two nights earlier, stayed in Spokane, and was driving to Missoula that night to meet her husband.

Officer Polich returned to his patrol car to request a license and registration check and a criminal history report on Eden. Officer Polich also requested backup because he intended to ask Eden for permission to search the vehicle. Officer Michael Johnson responded to the scene shortly thereafter.

As he waited for more information from the dispatcher regarding the status of Eden's driver's licence, Officer Polich returned to the vehicle and informed Eden that she would have to post a $40.00 cash bond for the speeding violation. Eden responded that she would be able to post the required bond. Officer Polich returned to his patrol car to complete the citation.

Officer Polich asked the dispatcher to call National Car Rental to determine whether Eden was authorized to drive the vehicle. He had not yet received information regarding the status of Eden's driver's license.

The dispatcher then reported to Officer Polich that Eden had been arrested for auto theft and unauthorized use of a vehicle. A few minutes later, the dispatcher advised Officer Polich that the rental car company had indicated that Eden was not an authorized driver of the vehicle. Officer Polich then asked the dispatcher to contact National Car Rental again to determine how it wanted to dispose of the vehicle.

---

[1] The subsequent investigation revealed that Eden's father was the male identified on the rental agreement. At the time the car was rented, Eden accompanied her father to the rental car counter and conferred with the rental staff. Although his credit card was used, Eden's father sat on a bench while his daughter completed the entire transaction and rented the vehicle.

Officer Polich then asked Eden to exit the vehicle so that he could explain the speeding violation and to bring with her the $40.00 roadside bond. He continued to ask Eden questions regarding her address and telephone number as he waited for confirmation from the dispatcher. Officer Polich issued the citation and took the $40.00 bond. Although he did not articulate it to Eden, at some point prior to issuing the citation, Officer Polich was satisfied that the car was not stolen. Although the traffic-citation transaction was then complete, Officer Polich further detained Eden explaining that there was a problem with the rental car.

The dispatcher contacted Officer Polich and advised him that the rental car company wanted the vehicle towed. Officer Polich then advised Eden that the car would be towed, but informed her that she was "free to leave."[2]  Officer Polich then asked Eden for her consent to search the vehicle for drugs or cash. Officer Polich informed Eden that, while it was her right to say no to the search, the car would be towed in any event. Although Eden suggested that her husband would need to give consent to the search of the vehicle, Officer Polich stated that she must provide the consent because she was the one driving the car. Eden refused to consent.

Eden asked Officer Polich for a ride to the next town. Officer Polich agreed to provide her with transportation, but said that he would have to search her and her bags for his safety. During this exchange with Officer Polich, Eden asked if she could have access to her cellular telephone to which Officer Polich responded: "You can get your phone. You can get whatever you need. But like I said, before you come into my car I'm going to need to check your purse and everything."

Eden walked back to the rental car accompanied by both police officers. She entered the car

---

[2]      The parties both agree that Officer Polich first indicated to Eden that she was free to leave at 2:11 A.M., approximately 24 minutes after the initial stop.

and closed the door while the officers waited outside. Officer Polich noticed several empty alcohol bottles in plain view on the inside of the vehicle. He asked Eden to step out again, conducted an abbreviated field sobriety test and determined that she was not impaired. Officer Polich then said "[b]asically we're just waiting for the tow, so why don't you just go and just grab your stuff real quick and we'll get going."

Eden removed her purse, cellular phone and a small rolling suitcase from the passenger compartment of the vehicle. As she removed the rolling suitcase from the back seat, Officer Polich again stated that he would need to search everything that she was removing from the vehicle if she was to ride in the patrol car. Eden then stated that she did not want a ride. Officer Polich advised Eden that the nearest town was seven miles away and that the closest taxi was forty-five minutes away. Officer Polich again told Eden that she was "free to leave anytime" and that the decision to ride with him was up to her. Eden then declined to ride in his patrol car, and began walking down the highway. Officer Johnson had already taken the keys to the vehicle by this point.

Shortly thereafter, Officer Polich received consent to search the vehicle from the rental car company. Officer Polich opened the trunk of the rental car and discovered a suitcase. Both officers lifted the suitcase and noticed that it was heavy. Officer Polich opened the suitcase and found twenty-three kilograms of cocaine. He then drove down the highway and arrested Eden, who was still walking.[3]

---

[3]     As set forth by the district court, the following is a brief chronology of events:

- 1:47 A.M. - Polich stop Eden for speeding.
- 1:50 A.M. - Polich calls Eden's driver's licence into dispatch.
- 1:53 A.M. - Polich said Eden would be cited and needed to pay $40 cash bond.
- 1:57 A.M. - Polich asks the dispatcher to check authority of Eden to drive with rental company.
- 1:59 A.M.- Polich learns of some indication of a criminal history dealing with a stolen car.
- 2:04 A.M. - Polich asks the dispatcher to determine how the rental car company would like to

Eden was indicted along with two other co-defendants for conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. Eden filed a motion to suppress. Eden argued that the officer did not have a reasonable suspicion that she was engaged in illegal activity to justify continued detention once the purpose of the traffic stop was completed. Further, Eden maintained that the police did not have valid consent to search the trunk of the vehicle and that by searching it without legal authority, Office Polich infringed on her legitimate expectation of privacy in violation of her right to be free of unreasonable searches under the Fourth Amendment of the United States Constitution. The United States opposed the motion, arguing that the evidence of the cocaine in the trunk should not be suppressed because Eden voluntarily abandoned the property when she left it in the vehicle after two statements by the police that she could collect all of her belongings.

Following a hearing, the district court granted Eden's motion. With respect to the issue of whether Eden had abandoned the suitcase in the back of the rental vehicle, the district court found that Eden had a privacy interest in both the car and the suitcase. The district court found that she did not abandon the vehicle and concluded that it had been seized by the police.

Specifically, with respect to Eden's interest in the rental car, the district court found that (1) Eden was a licensed driver; (2) Eden was able to present the rental agreement and possessed sufficient information about the vehicle; (3) Eden's father, who was the authorized driver in the rental agreement, gave Eden the car with his permission to drive it; and (5) Eden had a business relationship with the rental company. *See United States v. Smith*, 263 F.3d 571, 588 (6ᵗʰ Cir.

dispose of the car.
- 2:05 A.M. - Eden instructed to get out of the car and police ask if she can post the $40 bond.
- 2:10 A.M. - Speeding-citation transaction complete; Eden told the car would be towed.
- 2:11 A.M. - Eden told she is free to leave for the first time.

2001)(analyzing privacy interests in rental vehicles for purposes of Fourth Amendment standing, and directing courts to consider such factors as whether the driver is licensed, has knowledge of the rental agreement and whether the defendant-driver is operating the vehicle with the permission of the authorized driver on the agreement). As such, the district court found that Eden had a legitimate expectation of privacy in the rental vehicle and that the police had seized it. The United States does not challenge these findings or the district court's application of *Smith*. It raises the single issue of whether Eden abandoned the suitcase located in the trunk.

As to the suitcase, the district court concluded that the record did not reflect that Eden verbally disavowed her ownership of the suitcase. The court ultimately found that Eden's conduct did not rise to the level of demonstrating a knowing, intelligent waiver of all ownership or her privacy interest in the suitcase simply because the car was being towed. The United States appealed the decision of the district court to suppress the evidence exclusively on this issue of abandonment. The government does not challenge any other conclusions reached by the district court.

**II.**

This Court is vested with jurisdiction pursuant to 18 U.S.C. § 3731 which provides that the courts of appeals have jurisdiction over appeals from "a decision or order of a district court suppressing or excluding evidence." The question whether property has been abandoned is a mixed question of law and fact. The district court's factual findings are examined for clear error, while the legal determination of abandonment is reviewed *de novo*. *United States v. Oswald*, 783 F.2d 663, 665-66 (6th Cir. 1986). In reviewing the factual findings, the Court considers the evidence "in the light most likely to support the district court's decision." *United States v. Guimond*, 116 F.3d 166, 169 (6th Cir. 1997) (internal quotations omitted); *see also Smith*, 263 F.3d at 581 (articulating

standard of review for district court decisions to suppress evidence).

### III.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. The Fourth Amendment protects both the interest in retaining possession of property and the interest in maintaining personal privacy. *United States v. Sanders*, 719 F.2d 882, 886 (6th Cir. 1983)(citing *United States v. Place*, 462 U.S. 696, 716 (1983)(Brennan, J., concurring)). In this case, the defendant's interest in retaining possession of personal property is implicated by the seizure of the suitcase in the trunk of the rental car.

The Supreme Court has "affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment." *Place*, 462 U.S. at 707. "[A] suitcase or briefcase is property of a kind in which the owner . . . normally has a strong expectation of privacy . . . ." *Oswald*, 783 F.2d at 666. This expectation, however, may be surrendered. *Id*. "'[O]ne who disclaims any interest in luggage thereby disclaims any concern about whether or not the contents of the luggage remain private.'" *United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 1982)(quoting *United States v. Miller*, 589 F.2d 1117, 1131 (1st Cir. 1978)).

Generally, neither a warrant nor probable cause is required to seize and search property that has been abandoned. *Abel v. United States*, 362 U.S. 217, 241 (1960); *Oswald*, 783 F.2d at 666. This exception to the warrant requirement exists because the protections of the Fourth Amendment extend only to places and items for which a person has a reasonable expectation of privacy; no person can have a reasonable expectation of privacy in an item that she has abandoned. *Hester v. United States*, 265 U.S. 57, 58 (1924). The term abandonment, as employed in this context, does

not refer to traditional notions of property law:

> The concept of abandonment . . . is a Fourth Amendment issue and the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."

*Tolbert*, 692 F.2d at 1044 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

In determining whether property has been abandoned, the Court analyzes whether the individual challenging the seizure retained a legitimate expectation of privacy in the property at the time it was seized. *Rakas,* 439 U.S. at 143. In this case, then, in order to determine whether the police violated Eden's legitimate expectation of privacy by searching the suitcase located in the trunk of the rental vehicle, the Court must assess whether she exhibited a legitimate expectation of privacy. The inquiry into whether Eden harbored a legitimate expectation of privacy requires an analysis of two elements:

> The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," . . . [that is,] whether . . . the individual has shown that "he seeks to preserve [something] as private." . . . . The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,'" . . . [that is,] . . . whether . . . the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

*Tolbert,* 442 U.S. at 1044 (quoting *Katz v. United States*, 289 U.S. 347, 351-61 (1967)). More concisely, we must examine first whether Eden exhibited a subjective expectation of privacy and, second, whether her subjective expectation was justifiable.

The case of *United States v. Tolbert* is particularly instructive. Government agents approached Tolbert as she was entering a taxicab after deplaning an aircraft, apparently intent on departing the airport without her luggage. This Court emphasized that "[t]his fact alone would not support a finding that she maintained no subjective belief that her bag was secure from government

-10-

intrusion. An individual may depart from an airport without claiming her luggage for a variety of reasons, with full and legitimate intent to return and claim the baggage." 692 F.2d at 1044. The Court found dispositive, however, the fact that Tolbert "insisted that she was traveling without luggage and specifically disclaimed ownership of the bag in issue." *Id*. at 1044-45. The Court concluded that the defendant could hardly assert a subjective expectation of privacy in luggage that she specifically disclaimed ownership thereof. The Court found that Tolbert affirmatively indicated that she had no interest in the secrecy of the contents of the suitcase by her actions and vigorous oral disclaimers. *Id*. at 1045.

Similarly, in *United States v. Sanders*, 719 F.2d 882, 883 (6th Cir. 1983), this Court found a police search of luggage that the officers suspected belonged to the defendant was unconstitutional. Sanders, unlike Tolbert, never affirmatively disclaimed the suitcase, although she neither confirmed nor denied that the luggage was hers. Sanders consistently refused to consent to a search of the suitcase and explained to the agents she had not claimed the it at the airport because she was not going straight home. This Court found that Sanders' words and actions supported an inference that she continued to have an interest in keeping the contents private. Because Sanders continued to have a legitimate expectation of privacy in the suitcase, the Court concluded that she at no time abandoned her luggage. 719 F.2d at 883.

In *United States v. Frazier*, 936 F.2d 262, 264-65 (6th Cir. 1991), this Court addressed whether a defendant had abandoned an unchecked bag at an airport when his companion left it on the floor while speaking to law enforcement agents. When the detective asked the defendant about the duffle bag, he denied that it was his. The Court found that the defendant's disclaimer constituted abandonment. *Id*. at 625.

In *United States v. Oswald*, the defendant left a briefcase in the trunk of a burning vehicle on the side of the interstate. 783 F.2d at 664. The defendant did not call the fire department or remain near the car to claim it when police arrived at the scene. He immediately left with a passerby, leaving the keys in the ignition and his briefcase in the trunk. Later that night, unbeknownst to the police, the defendant returned for reconnaissance of the vehicle at a fenced lot after it had been towed. The defendant left town the next day. *Id*. at 664-65. This Court held that the defendant abandoned the vehicle:

> When one leaves a suitcase in an airport baggage claim area, he leaves it in a place where there is normally some measure of security. It is reasonable to expect that checked luggage will be locked up, if not claimed within a reasonable time, and will be kept safe until the person holding the claim check comes to retrieve it. One who choses [*sic*] to leave luggage in an unlocked burned-out automobile at the side of a highway in the country can fairly be thought to have a much lower expectation of privacy--and Oswald's expectation, as we know, was very low indeed. . . .

> From the vantage point of [the officer], the indicia of abandonment seem reasonably strong. The fact that the driver of the Florida car had departed the scene very quickly would not of itself indicate abandonment if he had left to call the fire department, but [the police] knew that no such call was made. [The officer] knew that the Florida driver had not left his name with any of the motorists who had seen him go off with [a passerby]. [The officer] knew that the Florida driver had not left any message at either of the nearest exists on the interstate highway. And [the officer] knew that the Florida driver had not returned to the scene of the fire within the span of time in which a person having a legitimate expectation of privacy in the car's contents could reasonably have been expected to show up.

*Id*. at 667. The result in *Oswald* turned not on the fact that the defendant left the vehicle on the side of the road but on the fact that he did not take any steps within a reasonable amount of time to make his claim to the vehicle and its contents.

Ultimately, the government has the burden of establishing by a preponderance of the evidence that a "defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished [her] interests in the item

searched or seized." *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000).[4]

In *Basinski*, the Court of Appeals for the Seventh Circuit explained that "[t]here are three general types of abandonment cases":

> The first type is characterized by the presence of a fleeing defendant who relinquishes an object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it. . . . Because he has disposed of the property in a location that affords easy access to the public, a reasonable person would believe that the defendant's possessory interest in the property is so eroded that anyone has a right to retrieve it. The second type of case is closely related to the first, for in so-called "garbage cases" the defendant places material in or near a refuse receptacle that is readily accessible to the public, and in which he usually places other discarded materials. . . . By this conduct and the location of the receptacle, the defendant leads reasonable people to believe that he no longer cares what becomes of his trash, or articles mistaken for trash. In the third type of case, the defendant is usually caught red-handed with or near a container of contraband, whereupon he denies that the container or its contents are his. . . . Taken at face value, this denial makes it reasonable to conclude that the defendant claims no possessory interest in the items.
>
> The fact that this present case does not fit into any of these three categories strongly suggests that no abandonment occurred. The present case stands in stark

---

[4] Eden argues that the warrantless search of the rental vehicle was conducted without probable cause and thus violated the Fourth Amendment. Although she maintains that she never abandoned the property, she argues, even if she had, the abandonment occurred as the result of this unconstitutional seizure and thus was not valid. On this issue, the United States agrees that Eden enjoyed an initial expectation of privacy at the outset of the transaction, but that when the police officer seized the vehicle at the request of the rental car company, any expectation of privacy that the defendant had in the vehicle was extinguished. The government relies on *United States v. Allen*, 106 F.3d 695 (6th Cir. 1997) to support its position. *See Allen*, 106 F.3d at 699 (holding that motel manager's act of locking defendant-patron out of hotel room divested him of his status as an occupant and concomitantly terminated his privacy interest its contents such that the manger's consent to the officer's search of the room was all that was required to avoid constitutional infirmity).

The district court, however, did not make an express finding that the police acted improperly in seizing the rental vehicle. Thus, we decline to address the issue.

The Court notes, however, that even if the vehicle was properly seized at the request of the rental car agency, and the rental car agency gave the police consent to conduct a search, the district court found that the rental car company could not waive Eden's Fourth Amendment right or provide the requisite consent to search Eden's personal bag. Again, the United States has not challenged this decision by the district court.

> contrast to the three scenarios because Basinski never explicitly disclaimed a privacy interest in the briefcase and never placed the briefcase in an area readily accessible to the public, such as an area usually reserved for abandoned items like trash.

*Basinski*, 226 F.3d at 837. The court concluded that the government did not establish that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized. *Id*. at 838-39.

Here, the United States argues that the district court erred in finding that Eden did not abandon the suitcase. The government relies heavily on the fact that Officer Polich gave Eden two opportunities to retrieve her personal belongings from the rental car after she had been informed that the vehicle would be towed. The United States contends that she walked away from the vehicle and left the suitcase inside the trunk, knowing that the car would be towed. The government therefore maintains that a reasonable person in the police officer's position would have believed that Eden abandoned any expectation of privacy in the suitcase because she did not collect the luggage with her other personal belongings and she had no assurance that she would have access to the rental car in the future. The United States speculates that, when Eden walked away leaving the suitcase in the car, Officer Polich could be left with only one of two conclusions: (1) Eden intentionally left the suitcase behind knowing she would not have access again; or (2) she was unaware that the suitcase was in the trunk. Eden counters that she could have just as easily forgotten about the suitcase, or alternatively believed she could return to the rental company and claim personal items left in the vehicle.

Applying the legal principles of abandonment to the facts of this case, the Court concludes that Eden retained a reasonable expectation of privacy in the suitcase at the time of the search and

did not abandon her luggage. The Court does not determine that a defendant must verbally or expressly disclaim her personal property in order to support a finding of abandonment. Instead, in this case, the Court finds that the government has not demonstrated that Eden exhibited a sufficient subjective intent, through her voluntary words, conduct or otherwise, to relinquish her interest in the suitcase.

*Tolbert*, *Sanders* and *Oswald* make clear that a defendant must do more than merely walk away from something as private as a suitcase to support a finding of abandonment. Here, the record contains nothing in the form of oral disclaimers or voluntary, unambiguous conduct that could support a finding that Eden intended to distance herself from her privacy interest in the suitcase. Walking away alone does not provide a conclusive indication of her intent or furnish the requisite support for a determination that she maintained no subjective belief that the luggage was secure from police intrusion. The fact that Eden did not take advantage of Officer Polich's offer to collect the suitcase with all of her other belongings, without more, is not sufficient to established that she voluntarily relinquished her right to privacy in the luggage remaining in the car. In fact, Eden exhibited a subjective expectation of privacy when she refused to consent to the search of the vehicle and chose to walk away rather than submit to a search of her person and bags. Looking solely to the external manifestations of her intent as judged by a reasonable person possessing the same knowledge available to Officer Polich, the government has not establish that Eden abandoned the suitcase.

Our dissenting colleague contends that the abandonment analysis must focus upon what a reasonable police officer would have concluded from Eden's conduct. As the foregoing analysis explains, whether abandonment has occurred is determined by the acts or omission of the *property*

-15-

*owner*, as observed by a law enforcement officer. The crux of the inquiry must be upon the conduct of the property owner so as to ascertain whether she exhibited a continued expectation of privacy. The officer's observations, and not his conduct, are significant in this regard, particularly because probable cause is not required to seize property that has been abandoned. *Abel*, 322 U.S. at 241; *Oswald*, 783 F.2d at 666. Thus, we must focus on whether Eden's outward manifestations demonstrated that she sought to preserve the suitcase as private, through the prism of a reasonable officer.

The dissent also compares the facts of this case to, in which a defendant left a suitcase in an airport, and *Sanders*, in which a defendant left a suitcase in a burning car. This Court found no abandonment in *Oswald*, but did find that Sanders had abandoned the suitcase. In our view, Sanders voluntarily relinquished possession of a suitcase. In this case, Eden did not voluntarily relinquish her property in the trunk of the vehicle. Instead, she was told that she could not take any items with her into the police car, unless she first consented to a search. Otherwise, her only choice was to leave the car and begin walking seven miles to the nearest town at 2:30 A.M. In our view, the fact that she left a large, heavy suitcase in the trunk of the car in these circumstances does not constitute abandonment.

It is important to note the narrow scope of our holding in this case given the procedural posture in which it arises. The government has failed to challenge the district court's ruling that the rental car company could not provide the requisite consent to search the suitcase, even if the company did provide consent to search the vehicle. The district court found that the rental car company could not waive Eden's Fourth Amendment rights and could not give consent to search the suitcase. Because the government has not sought review of this decision, this Court is without

-16-

jurisdiction to question it.

Nor has the government appealed the district court's determinations with respect to inevitable discovery. The record contains some indication that the government characterized the search of the car as an inventory search and argued that the police would have inevitably discovered the drugs as they conducted the inventory. An inventory search is a well-defined exception to the warrant requirement, but is valid only if the search is administered in good faith, according to reasonable, standardized criteria. *Colorado v. Bertine*, 479 U.S. 367, 374 (1987). The district court found that the government had not proved that it would have inevitably discovered the drugs because the search was not an inventory search and was not conducted pursuant to standardized-police policy. Indeed, the car was not being impounded but instead was being towed to the rental car agency. The record does not contain any evidence from which this Court could conclude that the rental car agency would have searched the car, opened the suitcase and found the drugs, as opposed to returning the luggage to the driver.

Thus, the single issue for our review relates to whether Eden abandoned the suitcase in the trunk of the rental car. On this subject, we find that the government has not established that Eden's voluntary words or conduct, or any other manifestations of her intent, would lead a reasonable person in Officer Polich's position to believe that she relinquished her property interest in the suitcase. Accordingly, the district court's decision to suppress the evidence is **AFFIRMED**.

RYAN, Circuit Judge, dissenting.          While I agree that we should decide this appeal by reaching the abandonment issue, I respectfully disagree with my colleagues' conclusion that the defendant, Terri Leigh Eden, did not abandon the suitcase in the trunk of her car when she walked away from the scene of the traffic stop.  In my judgment, the government established by a preponderance of the evidence that Eden's statements and her behavior during the traffic stop would lead a reasonable person in Officer Polich's circumstance to believe that Eden was relinquishing her privacy interest in the suitcase in the car's trunk in an attempt to distance herself from its illegal contents.  See United States v. Basinski, 226 F.3d 829, 836 (7th Cir. 2000).

I would reverse the district court's order granting Eden's motion to suppress and remand with instructions to the district court to consider whether the search and seizure of Eden's rental car violated her rights guaranteed by the Fourth Amendment.

**I.**

The facts of this interesting and unusual case are adequately detailed in the majority opinion. What they mean in terms of the so-called abandonment exception to the Fourth Amendment prohibition against the warrantless search of the contents of a suitcase found in the trunk of an automobile that we presume for now, was lawfully seized, is what divides my colleagues and me. We are significantly benefitted by having viewed a videotape (with partial audio) of the entire episode of Eden's encounter with Officer Polich, from the time he stopped her car for a speeding violation at about 1:50 a.m. on the dark, rural highway in Mineral County, Montana, until, almost 40 minutes later, with the officer's permission, she walked away from the scene above, along the shoulder of the highway into the night.  Officer Polich knew, but Eden did not, that there was a camera mounted on the police car and a microphone on Polich's person, recording the whole

episode.

Our duty, as I have said, is to determine as best we can, not whether we think Eden walked away from the car and the suitcase in its trunk, with an intention permanently to relinquish her privacy interest in the suitcase and its contents, but whether a reasonable police officer, in Officer Polich's circumstance, given his professional experience and his extensive interrogation of Eden at the side of the highway, would reasonably think so.

As always, when state of mind is to be deduced from a body of circumstantial evidence, we look to the circumstances as a whole; we do not assess separately, the individual increments of conversation and behavior that comprise the whole, counting up the number of increments that point in one direction and the number that point in another, and award the prize to the side having the most "points."

It is important to recognize that, strictly speaking, it is not Eden's state of mind we are to determine; that is, whether she intended to abandon the suitcase. It is the state of mind of the fictional "reasonable police officer" in Officer Polich's circumstance, that we seek to discern. The question is whether he or she would reasonably have concluded that Eden intended to give up her privacy rights in the suitcase and its contents.

Officer Polich testified that Eden seemed nervous when he approached her after stopping her car for speeding. He said she hesitated before answering his basic questions about the origin and destination of her travel. He said he suspected illegal activity, and called for back-up assistance.

After advising Eden at length about her alleged speeding, and the requirements of Montana law for posting bond, Officer Polich handed Eden the speeding ticket, and Eden handed him the bond money. That business done, Officer Polich made repeated, courteous attempts to obtain Eden's

consent to search the car and her personal belongings. Eden repeatedly refused to permit the officer to search the car, which ensured that Eden's belongings anywhere in the vehicle remained private. Officer Polich then asked his dispatcher to advise the car rental company that an "unauthorized" person, Eden, was driving the rental car and inquire whether the rental company wished him to confiscate the vehicle. Advised by his dispatcher that the rental company did ask that he confiscate the car, Officer Polich told Eden he was going to have her car "towed." Eden inquired about getting a ride to the next town, which Polich told her was about seven miles away. Polich told her he would drive her to the next town, but that for his own safety, he would have to search her and any belongings she brought into the car with her. Eden then asked for permission to retrieve her cellular phone from inside the car, and Officer Polich responded: "You can get your phone. You can get whatever you need. But like I said, before you come into my car I'm going to need to check your purse and everything."

When Eden reentered the car to retrieve her phone, Officer Polich noticed several empty whisky bottles in plain view inside the vehicle. He directed Eden to step out of the car again, and submit to a "field sobriety test." After concluding that Eden was not intoxicated, Officer Polich made it clear that he had taken possession of her car at the behest of the rental company, but that she was "free to go." He stated: "Basically we're just waiting for the tow, so why don't you just go and grab your stuff real quick and we'll get going." Eden retrieved her purse, her cell phone, and a small rolling suitcase from the passenger compartment of the car, but nothing from the trunk. Officer Polich explained to Eden, once again, that she was free to walk up the shoulder of the highway, alone, in the middle of the night, but if she wished to accept his invitation to drive her to the next town, he would have to search her belongings. While Eden was thinking about Officer Polich's

conditional invitation and before she answered, he emphasized that the nearest taxi was 45 minutes away, and the nearest town was seven miles away. The videotape captures Eden silently pondering the situation. After reflecting on the matter, and, despite her initial inquiry about a ride, Eden declined Officer Polich's request to search her belongings and began to walk up the highway, alone, at approximately 2:30 a.m., and disappeared into the darkness, making very clear that she intended to keep the contents of her purse and the small rolling suitcase private.

Eden spent approximately 40 minutes, at the side of the road, with Officer Polich. Despite her careful deliberation before refusing Officer Polich's requests to search her car and her personal belongings—cell phone, small rolling suitcase, and purse—Eden did not mention the suitcase in the trunk of the car or make any attempt to retrieve it. Given Eden's firm and repeated refusal to consent to Polich's several requests to search her purse and small suitcase, and given further her decision to begin walking up the highway alone in the middle of the night, a reasonable person in Officer Polich's circumstance would have concluded that Eden meant to maintain her privacy in her purse and rolling suitcase, and to distance herself from the car and anything in it, including the suitcase full of cocaine in the trunk.

## II.

In United States v. Sanders, 719 F.2d 882 (6th Cir. 1983), we held that the defendant did not abandon her suitcase when she left an airport without retrieving the suitcase from the baggage claim area. We explained that Sanders never affirmatively disclaimed the suitcase, and, "[m]ore important, she consistently refused to consent to a search of the suitcase." Id. at 886. We also noted that Sanders explained to the agents that she had not claimed the suitcase because she was not going straight home. Id. Based on those facts, we concluded that one could properly infer from Sanders's

-21-

words and actions that she continued to indicate that she had a privacy interest in the suitcase, and therefore, she did not abandon it. Id.

But, in United States v. Oswald, 783 F.2d 663 (6th Cir. 1986), we held that the defendant abandoned a suitcase when he left it inside an unlocked, burning car on the side of an interstate highway. Id. at 663. Oswald left the scene with a passerby, did not report the fire, and did not return to the scene within a reasonable time to retrieve the car or its contents. Id. at 664, 666. Distinguishing Sanders, we explained that a person who leaves a suitcase in a baggage claim area in an airport has a reasonable expectation that the suitcase will be locked up and kept safe until he returns with the claim check, but that Oswald had no such reasonable expectation of privacy when he left his suitcase in a burning car on the side of the highway. Id. at 667. We also explained that Oswald could have retained his privacy interest in the suitcase by remaining on the scene, or returning to the scene within a reasonable time to tell the officers to leave the suitcase alone. Id. at 668.

Of course, this case is neither Sanders, nor Oswald; it presents its own unique set of facts. But, to the extent that it matters, I think our facts are more analogous to those in Oswald than those in Sanders.

Unlike the defendant in Sanders, Eden did not leave the cocaine-laden suitcase in a known, secure location such as a baggage claim area. When she left the car and began walking up the highway, she had no idea where the car would be taken or by whom. She knew only that the car would be towed and eventually returned to the rental car company. She did not know whether the car would first be towed to a police impound lot or some other place, and she had no idea where the rental car company would direct it ultimately be taken.

In my judgment, what occurred during and following Eden's confrontation with Officer Polich provides more than sufficient basis for this court to conclude that a reasonable police officer in Officer Polich's circumstance, evaluating the totality of what occurred, would conclude that Eden was abandoning whatever legitimate expectation of privacy she might have had in the suitcase in the car's trunk, when she took <u>some</u> of her personal belongings and walked away from the scene of the traffic stop into the darkness of the night. <u>See</u> <u>United States v. Tolbert</u>, 692 F.2d 1041, 1044-45 (6th Cir. 1982).

**III.**

I think these facts establish by a preponderance of the evidence that Eden relinquished her privacy interest in the suitcase in an attempt to distance herself from the 23 kilograms of cocaine inside it, but what's far more important, I think a reasonable person in Officer Polich's shoes would think so, too.

Therefore, I would reverse the district court's order granting Eden's motion to suppress and remand with instructions to the district court to consider whether the search and seizure of the car violated Eden's Fourth Amendment rights.