[Cite as *State v. Camper*, 2023-Ohio-4673.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 21AP-685<br>(C.P.C. No. 21CR-389) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| William C. Camper, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 21, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee. **Argued:** *Taylor M. Mick*.

**On brief:** *Yeura R. Venters*, Franklin County Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, William C. Camper, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to his plea of no contest, following the trial court's denial of his motion to suppress evidence. For the reasons that follow, we reverse.

I.    **Facts & Procedural History**

{¶ 2} By indictment filed January 28, 2021, plaintiff-appellee, State of Ohio, charged appellant with one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16, a felony of the fourth degree, and one count of carrying a concealed weapon, in violation of R.C. 2923.12, a felony of the fourth degree. On June 16,

2021, appellant filed a motion to suppress all evidence resulting from a warrantless search. The state opposed appellant's motion to suppress.

{¶ 3} On August 3, 2021, the trial court held an evidentiary hearing on the motion. Officer Patrick Nance of the Columbus Police Department ("CPD") was the sole witness to testify at the hearing and provided the following testimony. In the early morning hours of August 22, 2020, Officer Nance and several other officers were dispatched to 136 Dakota Avenue in the Franklinton neighborhood of Columbus, Ohio. The call involved a report of someone discharging a firearm into a house. When officers arrived, the suspected shooter barricaded himself inside a house. Several people had gathered on the street to watch the police activity surrounding the barricade situation. A grassy boulevard separates the east and west sides of Dakota Avenue.

{¶ 4} At approximately 2:00 a.m., Officer Nance was sitting in his patrol car on the east side of the street when he heard a "crash on the west side of the street directly across from" him. (Aug. 3, 2021 Tr. at 7-8.) Officer Nance looked toward the noise and saw a vehicle, being operated by appellant, "backing up" with the "bumper * * * hanging off." (Tr. at 8.) Officer Nance determined that appellant had just hit another parked car. Officer Nance then observed appellant hand a "book bag out the window" of the vehicle to an individual subsequently identified as Dusty Owens. (Tr. at 11.) Owens placed the backpack on his back without opening it. Officer Nance's body worn camera recorded Officer Nance telling another officer, "[g]et that book bag. Dude just took that book bag from him." (Tr. at 11.) Officer Nance drove his patrol car across the street while keeping "constant eye contact on Mr. Owens." (Tr. at 8.) Officers present at 136 Dakota Avenue began walking across the street toward the vehicle accident.

{¶ 5} The approaching officers told appellant "to stop," but appellant exited his vehicle and "fled inside the house" at 133 Dakota Avenue. (Tr. at 31.) Owens began walking toward the residence next door to the residence appellant entered. Officer Nance exited his vehicle and approached Owens. "As soon as" Officer Nance walked up to Owens, he "could smell immediately a strong odor of raw marijuana coming from the book bag that [Owens] was wearing." (Tr. at 8, 12.) Officer Nance testified that he was trained to recognize the smell of marijuana and that he had made hundreds of drug-related arrests during his ten-year career in law enforcement.

{¶ 6} When Officer Nance approached Owens he told him, "[g]ive me that book bag." (Tr. at 12.) Owens responded stating "[w]hat," and Officer Nance told him, "[t]ake it off now, take it off. Just take the book bag off. He just handed it to you." (Tr. at 12.) When Owens resisted giving up the backpack, Officer Nance and another officer grabbed Owens and Owens fell to the ground. Officer Nance then took a hold of the backpack and the other officer placed Owens in handcuffs.

{¶ 7} While the backpack remained closed and in Officer Nance's possession, Officer Nance told Owens he "[could] smell there is weed coming off of this bag." (Tr. at 14.) The following exchange then occurred between Officer Nance and Owens:

> Excerpt of video was played as follows:
>
> OFFICER NANCE: Why would you take a bag from somebody you don't even -- do you know that guy?
>
> MR. OWENS: He's my friend. I didn't know what -- he just asked me to hold the bag. What do you think is in it?
>
> (Unintelligible).
>
> OFFICER NANCE: You see somebody running from the police, they hand you a bag --
>
> MR. OWENS: I didn't know he was going to run from you all. You got to understand that.

(Tr. at 16.)

{¶ 8} Officer Nance then stepped away from Owens and unzipped the backpack. Officer Nance discovered two baggies containing marijuana and a loaded pistol inside. Officer Nance did not ask Owens or appellant for consent to search the backpack and Officer Nance did not have a warrant authorizing him to search the backpack.

{¶ 9} During Officer Nance's interaction with Owens, other officers were at 133 Dakota Avenue "yelling for [appellant] to come out." (Tr. at 9.) Appellant exited the house and was taken into custody. Appellant asked Officer Nance why he was being arrested, and Officer Nance replied, "[b]ecause you got in an accident and then you handed the bag to this guy and I saw you do it." (Tr. at 17.)

{¶ 10} Officers then transported appellant to the police station, where CPD Detective Christopher Journey interrogated him. Detective Journey informed appellant he would be charged with a felony resulting from the firearm discovered in the backpack. In response, appellant told Detective Journey that he "didn't have those," he "didn't give nobody no book bag," "there wasn't no book bag," and that the officers "should have seen that [appellant] handed a bottle of liquor" to Owens. (Tr. at 36-38.)[1]

{¶ 11} The trial court denied appellant's motion to suppress on the record at the conclusion of the suppression hearing. The court determined that appellant lacked standing to challenge the search because he "abandoned possession of the backpack." (Tr. at 52.) Following appellant's request for findings of fact and conclusions of law, the court issued an entry denying the motion to suppress on November 16, 2021. In the entry, the court expressly found Officer Nance's testimony credible and concluded that appellant abandoned the backpack when he "gave it to Mr. Owens, fled the scene of the vehicle accident, * * * entered 133 Dakota Ave," and "denied ever having the black backpack later during a custodial interview." (Nov. 16, 2021 Findings of Fact and Conclusions of Law at 5-6.) The court further determined that Officer Nance had probable cause to search the backpack once he "positively smelled the odor of raw marijuana emanating from the bag." (Findings of Fact and Conclustions of Law at 9.) The court also concluded that, even if Officer Nance's warrantless search violated the Fourth Amendment to the United States Constitution, the evidence discovered during the search should not be suppressed.

---

[1] The state admitted the video footage from Officer Nance's body worn camera as State's Exhibit "A" and admitted the audio recording of appellant's interview with Detective Journey as State's Exhibit "B". However, the record does not include a transcript of either State's Exhibit "A" or "B." *See* App.R. 9(B)(1) and (3) (providing, in relevant part, that "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App.R. 9(B)(6)," and that the "appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court"). " 'The transcription of any necessary proceedings is, therefore, required, and an appellant may not rely solely on an audio-recording for purposes of his or her appeal.' " *A.R.C. v. D.J.S.*, 10th Dist. No. 19AP-807, 2020-Ohio-5403, ¶ 14, quoting *State v. Tinley*, 9th Dist. No. 17CA0062-M, 2018-Ohio-2239, ¶ 6. *See also* Staff Notes App.R. 9. When a party admits an audiotape as an exhibit, the audio recording must be transcribed before it may be considered by a court of appeals. *See State v. Baker*, 4th Dist. No. 94CA1644 (Nov. 2, 1995), quoting *In re Grand Jury*, 4th Dist. No. 93CA09 (June 1, 1995) (holding that, pursuant to App.R. 9, " 'audiotapes' which are introduced into evidence during a proceeding" must be " 'transcribed if they [are] to be considered by us on appeal' "); *State v. Brown*, 97 Ohio App.3d 293, 297 (8th Dist.1994); *State v. Aekins*, 10th Dist. No. 21AP-630, 2023-Ohio-322, ¶ 30, fn.3. In the present case, however, the state played relevant portions of State's Exhibit "A" and "B" at the suppression hearing and those portions of the recordings were transcribed in the suppression hearing transcript. We will consider the portions of these exhibits which were transcribed during the suppression hearing in conducting our review.

{¶ 12} On November 18, 2021, appellant pled no contest to the charges in the indictment. The court accepted appellant's no contest plea and proceeded immediately to sentencing. The court sentenced appellant to a two-year term of community control. On November 23, 2021, the trial court issued a judgment entry finding appellant guilty of the charges and memorializing appellant's convictions and sentence.

## II.    Assignments of Error

{¶ 13} Appellant appeals, assigning the following two assignments of error for our review:

> [1.] Because the warrantless search of Appellant's backpack violated his right of privacy the lower court should have granted his motion to suppress. All evidence obtained as a result should have been excluded pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, Article I, Section 14 of the Ohio Constitution, R.C. 2933.21, R.C. 2933.22, Crim. R. 41, and Franklin County Loc. R. 4.12.
>
> [2.] The lower court erred when it issued its verdict of guilty outside Appellant's physical presence in violation of his Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution, and Crim. R. 43(A).

## III.    First Assignment of Error – Motion to Suppress

{¶ 14} Appellant's first assignment of error asserts the trial court erred by denying his motion to suppress evidence obtained in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. Appellant contends that he had standing to challenge the search of the backpack and that Officer Nance's warrantless search of the backpack was unconstitutional.

{¶ 15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Therefore, an appellate court's standard of review of a trial court's decision denying a motion to suppress is two-fold. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 13 (10th Dist.), citing *State v. Reedy*, 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5.

{¶ 16} When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8.

{¶ 17} With respect to the trial court's conclusions of law, however, our standard of review is de novo. *State v. Oliver*, 10th Dist. No. 21AP-449, 2023-Ohio-1550, ¶ 36. Accordingly, accepting the trial court's findings of fact as true, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 18} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution, provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United States Constitution. *Banks-Harvey* at ¶ 16, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 12.

{¶ 19} Thus, "[f]or a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies." *Moore* at 49. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted and emphasis sic.) *Katz* at 357. "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of

showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *Banks-Harvey* at ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974). *Accord Oliver* at ¶ 37; *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988), citing *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978).

{¶ 20} The Fourth Amendment says nothing about suppressing evidence obtained in violation of its command. *Davis v. United States*, 564 U.S. 229, 236 (2011). However, the United States Supreme Court created the exclusionary rule to " 'compel respect for the constitutional guaranty.' " *Id.*, quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960). The exclusionary rule prohibits the use in a criminal proceeding of evidence obtained in violation of the Fourth Amendment. *Moore* at 49, citing *Mapp v. Ohio*, 367 U.S. 643 (1961); *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 111 (1998). "Evidence obtained as a result of an unconstitutional stop, arrest, and/or search must be excluded at trial as 'fruit of the poisonous tree.' " *Oliver* at ¶ 40, quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

{¶ 21} As noted, the Fourth Amendment protects the right of people to be secure in their "effects" against unreasonable search and seizure. "Effects are defined as '[m]ovable property; goods.' " *State v. Mobley*, 10th Dist. No. 18AP-205, 2018-Ohio-4678, ¶ 10, quoting *Black's Law Dictionary* 628 (10th Ed.2014). Among other things, " 'effects' include luggage," and "a backpack [is] a type of luggage." *Mobley* at ¶ 10, citing *United States v. Place*, 462 U.S. 696, 705-06 (1983). Accordingly, the government generally may not search a person's private effects, including a backpack, "without the safeguards a judicial warrant provides." *United States v. Chadwick*, 433 U.S. 1, 11 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). *See also Arkansas v. Sanders*, 442 U.S. 753, 762 (1979), *overruled on other grounds by Acevedo* (holding that "luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy").

### A.    Abandonment

{¶ 22} The trial court held that appellant did not have standing to challenge the search in the present case because he abandoned the backpack. Fourth Amendment standing is distinct from the concept of jurisdictional standing. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 9. "[T]he word 'standing' in the Fourth Amendment

context is merely 'shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched.' " *Id.*, quoting *Byrd v. United States*, __U.S. __, 138 S.Ct. 1518, 1530 (2018).

{¶ 23} " 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' " *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969). Accordingly, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas* at 134. The state argued that appellant lacked Fourth Amendment standing at the suppression hearing and in the state's memorandum contra appellant's motion to suppress. *See Wintermeyer* at ¶ 21 (stating that, once a defendant asserts the government violated their Fourth Amendment rights, the government must challenge the defendant's generalized standing claim in the trial court).

{¶ 24} "[T]o have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized." *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 8, citing *Alderman* at 171-72. *Accord Byrd* at 1526, quoting *Rakas* at 143 (stating that the person "claiming the constitutional violation" must have a " 'legitimate expectation of privacy in the premises' searched"). *See also Florida v. Jardines*, 569 U.S. 1, 5, 11 (2013). A person has a legitimate expectation of privacy in property protected by the Fourth Amendment if they have a "subjective expectation of privacy that, viewed objectively, is reasonable under the circumstances." *State v. Gould*, 131 Ohio St.3d 179, 2012-Ohio-71, syllabus, following *Smith v. Maryland*, 442 U.S. 735 (1979). A person's subjective expectation of privacy is considered objectively reasonable if "society is prepared to recognize that expectation as legitimate." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir.1988), citing *California v. Ciraolo*, 476 U.S. 207, 211 (1986). *Accord United States v. Eden*, 190 Fed.Appx. 416, 421-22 (6th Cir.2006).

{¶ 25} A defendant does not have standing under the Fourth Amendment to object to a search and seizure of property the defendant has voluntarily abandoned. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph two of the syllabus. A defendant lacks standing to challenge a search of abandoned property because "society does not recognize

an expectation of privacy in abandoned property as being objectively reasonable." *Gould* at ¶ 20. *Accord United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983) (stating that "[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had").

{¶ 26} "The question of abandonment is a mixed question of law and fact." *United States v. Dillard*, 78 Fed.Appx. 505, 509 (6th Cir.2003), citing *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir.1986). To demonstrate abandonment "the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir.2000), citing *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir.2000). *Accord State v. Dailey*, 3d Dist. No. 8-10-01, 2010-Ohio-4816, ¶ 15. "Whether property has been abandoned 'is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent.' " *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir.2016), quoting *United States v. James*, 534 F.3d 868, 873 (8th Cir.2008). *Accord Eden*, 190 Fed.Appx. at 425.

{¶ 27} In *Freeman* the court explained:

> "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."

(Citations omitted.) *Freeman* at 297, quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973).

{¶ 28} The state contends that appellant failed to establish a legitimate expectation of privacy in the backpack because he did not demonstrate that he owned the backpack. However, abandonment for Fourth Amendment purposes differs from abandonment in

terms of property law. "In the context of search and seizure law, abandonment refers to a manifestation or appearance that the person has no interest in the property, rather than a full divestment of legal interest in the property." *State v. Dubose*, 164 Ohio App.3d 698, 2005-Ohio-6602, ¶ 43 (7th Dist.) "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's inquiry." (Internal citation omitted.) *United States v. Salvucci*, 448 U.S. 83, 91 (1980). *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir.2003) (noting that "ownership alone does not justify a reasonable expectation of privacy"); *Rakas* at 144, fn.12.

{¶ 29} Numerous abandonment cases concern the situation where a defendant discards an object by leaving it unattended in a public place. *See Dubose* at ¶ 42 (noting the long line of cases "establishing the principle that police may freely seize and search abandoned items, such as items thrown from vehicles during a police chase, items placed in trash containers, or items dropped by a pedestrian while fleeing from the police"); *Freeman* at 298; *State v. Moody*, 10th Dist. No. 92AP-699 (Mar. 9, 1993); *Dillard* at 512; *United States v. Landry*, 154 F.3d 897 (8th Cir.1998); *United States v. Morgan*, 936 F.2d 1561, 1570-71 (10th Cir.1991); *State v. Milan-Wade*, 8th Dist. No. 98347, 2013-Ohio-817, ¶ 22-23. In these cases, the defendant's actions manifest an intent to abandon the object because the defendant's "ability to recover the [item] depend[s] entirely upon fate and the absence of inquisitive (and acquisitive) passers-by." *Jones*, 707 F.2d at 1172. Accordingly, if a defendant leaves an item in a place where it is "available for anyone to find and peruse," the defendant has abandoned the item for Fourth Amendment purposes. *Dubose* at ¶ 42. *See Dillard*, 78 Fed.Appx. at 510 (noting that "[o]ne of the most crucial facts of an abandonment case is the location of the object in question").

{¶ 30} A defendant's "spontaneous denial of ownership, unaffected by police provocation, demonstrates sufficient intent of disassociation to prove abandonment." *United States v. Brady*, 842 F.2d 1313, 1316 (D.C.Cir.1988). *See United States v. Tolbert*, 692 F.2d 1041, 1044-45 (6th Cir.1982) (holding that the defendant abandoned luggage when she "insisted that she was traveling without luggage and specifically disclaimed ownership of the bag in issue" before officers searched the luggage at issue); *United States v. McDonald*, 100 F.3d 1320, 1323, 1327-28 (7th Cir.1996); *United States v. Iraheta*, 764

F.3d 455, 461 (5th Cir.2014). However, if a defendant disclaims property only after "the agents' unlawful conduct in detaining the bag," the defendant's disclaimer is "an involuntary act." *United States v. Labat*, 696 F.Supp. 1419, 1426 (Kan.1988). *Accord Tolbert* at 1045 (stating that if an "unconstitutional seizure or arrest * * * prompts a disclaimer of property," the unconstitutional seizure "vitiates" the disclaimer); *Katsaris v. United States*, 684 F.2d 758, 762 (11th Cir.1982); *United States v. Gwinn*, 191 F.3d 874, 877 (8th Cir.1999). If a defendant "drop[s] items while complying with police instruction," the defendant has not voluntarily abandoned the item. *Dillard* at 511. *Accord Smith v. Ohio*, 494 U.S. 541, 543-44 (1990); *State v. Belcher*, 2d Dist. No. 24385, 2011-Ohio-5015, ¶ 37.

**{¶ 31}** The trial court determined that appellant voluntarily abandoned the backpack when he handed it to Owens. Generally, " 'a person does not abandon his property merely because he gives it to someone else to store' or keep watch over." *Nowak*, 825 F.3d at 949, quoting *United States v. James*, 353 F.3d 606, 616 (8th Cir.2003). Whether a defendant left their property in the "care or responsibility of another," is a relevant consideration in the abandonment analysis. *Morgan*, 936 F.2d at 1570.

**{¶ 32}** For instance, in *Basinski*, 226 F.3d at 829 the defendant "entrusted [a] locked briefcase to a life long friend so that [the friend] might hide it on private property owned by [the friend], in a locked barn." (Emphasis omitted.) *Id.* at 837. The reviewing court determined that the defendant did not abandon the briefcase by giving it to his friend, because the defendant "never explicitly disclaimed a privacy interest in the briefcase and never placed the briefcase in an area readily accessible to the public, such as an area usually reserved for abandoned items like trash." *Id.* at 837. The defendant's conduct "exhibited a continued privacy interest in the briefcase" because he "specifically ask[ed] [the friend] to keep the case hidden in a private place." *Id. See also United States v. Blaze*, 143 F.3d 585, 591 (10th Cir.1998) (concluding that the defendant did not abandon a locked briefcase when he "entrusted it to his associates"); *State v. Wise*, 6th Dist. No. H-06-038, 2007-Ohio-3113, ¶ 16 (holding that it was "reasonable for [the defendant] to have an expectation of privacy in his closed backpack left inside [his companion's] home").

**{¶ 33}** In *United States v. Most*, 876 F.2d 191 (D.C.Cir.1989) the defendant entered a grocery store carrying a bag and asked one of the grocery store clerks to "watch his bag." *Id.* at 192. The defendant completed his shopping, asked the store clerk if she would

continue to watch his bag, and exited the store carrying his groceries. *Id.* Officers, who had been following the defendant, then entered the store and searched the bag. *Id.* The reviewing court concluded that the defendant did not abandon the bag he left in the store because he "did not place his bag within the reach of the world generally. Instead, he entrusted his belongings to the professional supervision of the cashiers with the clear understanding that they would protect the property from intrusion by the public." *Id.* at 197. Although the defendant "had departed the store when the search occurred," the court held that "his brief absence -- preceded by a renewed request that the clerks continue to watch his bag -- hardly constituted an act of abandonment." *Id.*

{¶ 34} In *Dubose*, 2005-Ohio-6602, officers watched the defendant reach out of his car window and hand his girlfriend some papers "with a can sandwiched between the papers." *Id.* at ¶ 5. Officers searched the can and discovered heroin. The reviewing court concluded that the defendant did not abandon the can by handing it to his girlfriend, because he "did not deny ownership of the * * * can, or throw it from his vehicle, or deposit it into a trash container, or drop it to the sidewalk and kick it out of view." *Id.* at ¶ 44. The court also noted that the defendant handed the can to his girlfriend, "not a stranger who had merely wandered by." *Id.* at ¶ 44. *Compare United States v. Austin*, 66 F.3d 1115, 1119 (10th Cir.1995), fn.2 (finding that the defendant abandoned his bag when he left it in the care of "a stranger" at the airport, "without any conditions or agreement," because by leaving his bag "in the possession and control of [a stranger], defendant assumed the risk that [the stranger] would allow authorities access to the bag").

{¶ 35} The state relies on *Nowak*, 825 F.3d at 946 to support its contention that appellant abandoned the backpack when he handed it to Owens. In *Nowak*, the defendant was a passenger in a friend's car when police initiated a traffic stop of the vehicle. During the traffic stop, the defendant suddenly exited the vehicle and ran, leaving his backpack in the friend's car. *Id.* at 947. The reviewing court concluded that the defendant abandoned the backpack because he did not ask the driver "to store or safeguard the backpack for him. Indeed, he said nothing at all to [the driver] when he ran from the car, leaving the backpack behind and leaving [the driver] 'amazed' at [the defendant's] flight." *Id.* at 949. The court determined that, by saying nothing, the defendant failed to ensure the driver would "take

care or possession of the backpack in his absence such that his personal belongings would remain private." *Id.*

**{¶ 36}** Appellant contends that he did not forfeit his reasonable expectation of privacy in the backpack simply because he handed the backpack to his friend, Owens. (Appellant's Brief at 33.) Before Officer Nance searched the backpack, he asked Owens whether he knew appellant. Owens responded stating "[h]e's my friend * * * he just asked me to hold the bag." (Tr. at 16.) Officer Nance's body worn camera recorded Owens' statement and the state played the footage during the suppression hearing. Officer Nance also affirmed on cross-examination that Owens told him he was friends with appellant.

**{¶ 37}** However, the trial court did not expressly address the fact that appellant and Owens were friends or the fact that appellant asked Owens to hold the backpack. The trial court concluded, without identifying the relationship between appellant and Owens, that appellant abandoned the backpack by handing it to Owens, fleeing the scene of the vehicle accident, and by subsequently denying ownership of the backpack during his custodial interview.

**{¶ 38}** Our review of the case demonstrates that the facts regarding the relationship and understanding between appellant and Owens at the time the backpack transferred possession were necessary to the abandonment analysis. Appellant did not leave the backpack on the sidewalk or in some other public place where any member of the public would have been free to rummage through its contents. Appellant also did not hand the bag to a stranger or leave the backpack with Owens without his permission. *Compare Austin*; *Nowak*. Instead, appellant handed the backpack to his friend and asked him to hold it. Appellant's request to Owens demonstrated appellant's intent that Owens would take care and possession of the backpack in appellant's absence. Owens accepted the terms of the impromptu bailment when he took the backpack and placed it on his back without opening it. *See Black's at* 169 (10th Ed.2014) (defining a bailment as "[a] delivery of personal property by one person (the bailor) or another (the bailee) who holds the property for a certain purpose, usu. under an express or implied-in-fact contract," and stating that a "bailment involves a change in possession but not in title"); *United States v. Benitez-Arreguin*, 973 F.2d 823, 828-29 (10th Cir.1992) (holding that "a person transporting luggage as a bailee * * * has a reasonable expectation of privacy" in the luggage).

{¶ 39} While an appellate court must accept a trial court's factual findings if they are supported by competent, credible evidence, " 'a trial court's findings of fact are deemed incomplete when they fail to include pertinent facts that were presented during the hearing and which are necessary to conduct the legal analysis.' " *State v. Nichols*, 10th Dist. No. 19AP-612, 2020-Ohio-5157, ¶ 45, quoting *State v. Soto*, 9th Dist. No. 16CA011024, 2017-Ohio-4348, ¶ 10. *See also State v. Trivett*, 9th Dist. No. 15CA0041-M, 2016-Ohio-8204, ¶ 8 (stating that if a trial court omits fact which are "necessary to a determination" of a pertinent legal question, "the trial court's findings of fact as a whole are not supported by competent, credible evidence"). When a trial court fails to make necessary factual findings, "a reviewing court must reverse a trial court's suppression ruling and remand the matter for the trial court to make factual findings in the first instance." *Nichols* at ¶ 45, citing *State v. Martucci*, 9th Dist. No. 28888, 2018-Ohio-3471, ¶ 9. Accordingly, we must reverse the trial court's suppression ruling. We note, however, that the state did not present any evidence to contradict Owens' statements to Officer Nance.

{¶ 40} The trial court also relied on the fact that appellant was fleeing the scene of the vehicle accident to conclude that appellant abandoned the backpack. However, a fleeing defendant may still relinquish property under circumstances demonstrating that they have not forfeited their legitimate expectation of privacy in the property. *See Commonwealth v. Straw*, 422 Mass. 756 (1996) (holding that the defendant did not abandon a briefcase he tossed from the window of his house into his fenced backyard as police approached his home because, by "throwing [the briefcase] into the fenced-in curtilage of his family's home, an area enjoying full Fourth Amendment protection," the defendant retained a reasonable expectation of privacy in the briefcase). Thus, a defendant's flight will not, on its own, establish voluntary abandonment.

{¶ 41} The trial court lastly relied on appellant's statements to Detective Journey to find that appellant abandoned the backpack. "In determining whether property has been abandoned, the Court analyzes whether the individual challenging the seizure retained a legitimate expectation of privacy in the property at the time it was seized." *Eden*, 190 Fed.Appx. at 421, citing *Rakas*, 439 U.S. at 143. *Accord United States v. Jacobsen*, 466 U.S. 109, 114-15 (1984). *See Robles v. State*, Sup.Ct.Ind. 285 S. 42, 510 N.E.2d 660, 663 (July 28, 1987) (noting that, when a defendant denies ownership of an item following a

warrantless search, the officer could not have "known at the time [of the search] that [the defendant] later would disclaim ownership"). Officer Nance acknowledged that, at the time he seized the backpack, appellant had not "denied that it was his backpack." (Tr. at 40.) Indeed, the record demonstrates that appellant never disclaimed ownership of the backpack prior to Officer Nance's search. Because appellant's statements at the police station occurred in response to Detective Journey's questions about the firearm discovered during the unlawful search, these statements did not amount to a voluntary act of abandonment and should have been suppressed as fruit of the poisonous tree. *See Tolbert*, 692 F.2d at 1045; *Gwinn*, 191 F.3d at 877; *Wong Sun*, 371 U.S. at 485.

{¶ 42} Based on the record evidence, we conclude that appellant did not forfeit his legitimate expectation of privacy in the backpack simply by entrusting the backpack to Owens. *Dubose* at ¶ 45. As such, appellant had standing to assert his personal Fourth Amendment rights.

### B.    Warrantless Search

{¶ 43} Although the trial court concluded that appellant lacked Fourth Amendment standing, the court also held that Officer Nance lawfully conducted a "probable cause search of the backpack." (Nov. 16, 2021 Findings of Fact & Conclusions of Law at 8.) Appellant notes that, even assuming Officer Nance had a reasonable, articulable suspicion sufficient to detain Owens and seize the backpack, "that did not supply [officers with] authority to search the backpack without a warrant." (Appellant's Brief at 49-50.) *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16-17 (10th Dist.).

{¶ 44} Police may lawfully seize an item of personal property "[w]hen there is probable cause to believe that the closed container holds evidence of criminal activity." *State v. Burroughs*, 169 Ohio St.3d 79, 2022-Ohio-2146, ¶ 16. Once an officer lawfully seizes a container, the risk that "the contents may disappear or be put to their intended use before a warrant may be obtained." *Id.* Therefore, once an item is seized "[t]here is no justification for allowing the officer to forego a warrant before opening the closed container." *Id. See United States v. Doe*, 61 F.3d 107, 111 (1st Cir.1995) (explaining that, while a warrantless seizure "temporarily deprives the defendant of a possessory interest only," a warrantless search entails an "intrusion upon privacy interests as well") (emphasis

omitted); *Chadwick*, 433 U.S. at 13 (stating that once government agents seized a footlocker and transported the footlocker to a secure location, "there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained," and, therefore, "it was unreasonable to undertake the additional and greater intrusion of a search without a warrant").

**{¶ 45}** The trial court concluded that Officer Nance had probable cause to search the backpack once he smelled the odor of raw marijuana emanating from the backpack. In *Moore*, 90 Ohio St.3d at syllabus, the Supreme Court of Ohio held that the "smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *Id.* (known as the plain smell doctrine). However, *Moore* did not hold that the odor of marijuana, on its own, constituted an exception to the warrant requirement. *See State v. Archer*, 197 Ohio App.3d 570, 2011-Ohio-5471, ¶ 26 (7th Dist.), citing *Alliance v. Barbee*, 5th Dist. No. 2000CA00218 (Mar. 5, 2001) (noting that *Moore* did not extend the "plain smell" doctrine so far as to hold that it could support both a finding of probable cause and an exception to the warrant requirement); *Wise*, 2007-Ohio-3113, at ¶ 15.

**{¶ 46}** The trial court did not address whether any exceptions to the warrant requirement justified Officer Nance's warrantless search. Instead, the court determined the search was justified based on probable cause alone. "Searches conducted without warrants," or an applicable exception to the warrant requirement, "have been held unlawful 'notwithstanding facts unquestionably showing probable cause.' " *Katz*, 389 U.S. at 357, quoting *Agnello v. United States*, 269 U.S. 20, 33 (1925). *See Chadwick* at 15-16. Therefore, even if we assume the odor of marijuana provided Officer Nance with probable cause to search the backpack,[2] Officer Nance's warrantless search was constitutionally unreasonable absent an applicable exception to the warrant requirement.

---

[2] Appellant challenges the continued validity of the plain smell doctrine under Ohio's current legislative framework, which permits the possession of marijuana for medical usage. Effective September 8, 2016, medical marijuana became legal in Ohio. *See* 2016 Sub.H.B. No. 523; R.C. 3796.06 (providing that medical marijuana may be dispensed as plant material); Ohio Adm.Code 3796:7-2-05 (regulating the possession of medical marijuana). *See also State v. Bell*, 2d Dist. No. 2022-CA-11, 2023-Ohio-1588, ¶ 14-15. Notably, on November 7, 2023, a majority of the voters of this state voted in favor of State Issue 2, a ballot initiative to legalize the possession and use of marijuana by adults at least 21 years of age. Regardless, because Officer Nance's search was not authorized by a warrant or an applicable exception to the warrant requirement, we need not resolve the continued validity of the *Moore* plain smell doctrine in the present case.

{¶ 47} The state contends that Officer Nance's warrantless search was justified under either the exigent circumstances exception or the search incident to arrest exception to the warrant requirement. *See State v. Penn*, 61 Ohio St.3d 720, 723-24 (1991) (listing the judicially recognized exceptions to the warrant requirement). In his motion to suppress, appellant argued that Officer Nance lacked probable cause and that "no exigent circumstances existed that qualif[ied] for an exception to the warrant requirement." (June 16, 2021 Mot. to Suppress at 8.) *See Wintermeyer*, 2019-Ohio-5156, at ¶ 10, citing *Xenia*, 37 Ohio St.3d at 218. In its memorandum contra, the state asserted that Officer Nance had probable cause and that he could have searched the backpack incident to appellant's arrest "for leaving the scene of an accident without completing the required action per [R.C.] 4549.02." (June 30, 2021 Memo Contra at 12.) At the suppression hearing, the state did not argue that any exception to the warrant requirement applied to the search.

{¶ 48} The state now asserts that exigent circumstances justified the search because of the barricade situation across the street and because "evidence of drug crimes can be easily concealed or destroyed." (Appellee's Brief at 38.) The state also asserts that Officer Nance could have searched the backpack incident to the arrest of either appellant or Owens for "illegal drug activity." (Appellee's Brief at 41.) Because the state did not raise these arguments in the trial court, it has waived them for purposes of the present appeal. "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *Wintermeyer* at ¶ 10. Therefore, "a litigant's failure to raise an issue before the trial court generally waives the litigant's right to raise that issue on appeal." *Oliver*, 2023-Ohio-1550, at ¶ 87. *Accord State v. Atchley*, 10th Dist. No. 07AP-412, 2007-Ohio-7009, ¶ 8, citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43 (1975). "This waiver rule applies to arguments not asserted either in a written motion to suppress or at a suppression hearing." *State v. Geiger*, 10th Dist. No. 15AP-1120, 2016-Ohio-7571, ¶ 12, citing *State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 14.

{¶ 49} Moreover, even if we were to address the state's present contentions, we would find neither exception applicable. Exigent circumstances exist when an officer believes a person is " 'in need of immediate aid to prevent a threat to life or limb,' " or where the officer believes " 'the imminent loss, removal, or destruction of evidence or

contraband' " is about to occur. *State v. Enyart*, 10th Dist. No. 08AP-184, 2010-Ohio-5623, ¶ 20, quoting *State v. Karle*, 144 Ohio App.3d 125, 131 (1st Dist.2001).  Officer Nance testified that he was "standing by waiting to see if detectives were going to respond" to the barricade situation when the incident with appellant occurred, and that the incident involving appellant was "completely unrelated" to the barricade/shooting situation. (Tr. at 7, 19.)  Officer Nance also admitted that, once he had possession of the backpack, there was no risk that he would "lose the backpack in the time that it would have taken [him] to obtain a search warrant."  (Tr. at 28.)  Accordingly, there is no indication that the unrelated barricade situation created an exigent circumstance in the present case, or that any exigency related to the loss or destruction of evidence existed after Officer Nance seized the backpack.

{¶ 50}  Following a lawful arrest, police may search any evidence on the arrestee's person as well as the area into which an arrestee might reach to grab a weapon or evidentiary item.  *See, e.g.*, *Chimel v. California*, 395 U.S. 752, 763 (1969).  The right to search incident to an arrest includes the right to search an item which is no longer accessible to the arrestee, "[a]s long as the arrestee has the item within his immediate control near the time of the arrest."  *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 183.  It is " 'axiomatic that an incident search may not precede an arrest and serve as part of its justification.' "  *Smith*, 494 U.S. at 543, quoting *Sibron v. New York*, 392 U.S. 40, 63 (1968).

{¶ 51} Because Owens had possession of the backpack and had separated from appellant, officers could not have searched the backpack incident to an arrest of appellant. Although the state contends generally that Owens could have been arrested for illegal drug activity, the record demonstrates only that Officer Nance smelled the odor of raw marijuana emanating from the backpack.  Currently, possession of less than 100 grams of marijuana is a minor misdemeanor offense.  R.C. 2925.11(C)(3).  R.C. 2935.26(A) prohibits an officer from arresting someone who has committed a minor misdemeanor offense, unless one of the exceptions listed in the statute applies.  *See State v. Campbell*, 10th Dist. No. 17AP-713, 2018-Ohio-3181, ¶ 23 (acknowledging that "possession of a small amount of marijuana is a minor misdemeanor in Ohio and, therefore, not an arrestable offense"); *State v. Robinson*, 103 Ohio App.3d 490, 496 (1st Dist.1995).  The state fails to demonstrate that officers could have searched the backpack incident to the arrest of Owens.

{¶ 52} Because no exception to the warrant requirement justified Officer Nance's warrantless search of the backpack, the search violated the Fourth Amendment to the United States Constitution. Therefore, the evidence discovered during the search of the backpack, including the firearm, should have been suppressed pursuant to the exclusionary rule.

{¶ 53} The trial court determined that, even if Officer Nance's search violated the Fourth Amendment, the exclusionary rule need not apply because Officer Nance did not exhibit "deliberate, reckless, or grossly negligent conduct." (Findings of Fact & Conclusion of Law at 10.) The purpose of the exclusionary rule is to deter future constitutional violations. *Davis*, 564 U.S. at 236-37. "When an officer acts with an objectively reasonable, good-faith belief that his or her conduct is lawful, the deterrence rationale for the exclusionary rule loses force." *Banks-Harvey*, 2018-Ohio-201, at ¶ 33, citing *Davis* at 241. The United States Supreme Court has applied the good-faith exception to searches conducted in objectively reasonable, good-faith reliance on "an invalid search warrant issued by a detached and neutral magistrate, to searches conducted in reasonable reliance on subsequently invalidated statutes, to searches conducted in reasonable reliance on erroneous information in a warrant database, and to searches conducted in reasonable reliance on binding judicial precedent." (Citations omitted.) *Banks-Harvey* at ¶ 33.

{¶ 54} However, when police exhibit " ' "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.' " *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, ¶ 42, quoting *Davis* at 2427, quoting *Herring v. United States*, 555 U.S. 135, 144 (2009). Ohio courts, including this court, have declined to apply the good-faith exception in cases in which "officers, conducting warrantless searches, relied on their own belief that they were acting in a reasonable manner, as opposed to relying upon another's representations." *State v. Thomas*, 10th Dist. No. 14AP-185, 2015-Ohio-1778, ¶ 46. *Accord United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir.2006).

{¶ 55} Officer Nance did not rely on a mistake made by some third person to justify his search of the backpack. Rather, Officer Nance testified that he searched the backpack because the odor of marijuana provided him with "the [probable cause] for the search." (Tr. at 9.) Officer Nance's belief that he could search the backpack based solely on probable

cause, without a warrant or applicable exception to the warrant requirement, was objectively unreasonable. *See United States v. Leon*, 468 U.S. 897, 922 (1984) fn. 23. As such, the good-faith exception to the exclusionary rule does not apply to the facts of the present case.

{¶ 56} Based on the foregoing, we sustain appellant's first assignment of error.

## IV.     Second Assignment of Error – Guilty Verdict

{¶ 57} Appellant's second assignment of error asserts the trial court erred when it accepted his no contest plea but failed to enter its verdict of guilty in his presence. *See* Crim.R. 43(A)(1) (stating that the "defendant must be physically present at every stage of the criminal proceeding" including "the return of the verdict"). Our resolution of appellant's first assignment of error renders his second assignment of error moot, and we need not address it. *See* App.R. 12(A)(1)(c).

## V.     Conclusion

{¶ 58} Having sustained appellant's first assignment of error, thereby rendering appellant's second assignment of error moot, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case to that court for proceedings consistent with law and this decision.

*Judgment reversed.*

BEATTY BLUNT, P.J., and LELAND, J., concur.

_____